**TEAMSTERS LOCAL UNION NO. 5, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Ind., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 26105.

United States Court of Appeals Fifth Circuit.

Dec. 20, 1968.

William C. Bradley, Baker, La., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Peter Kinzler, Atty., N.L.R.B., for respondent.

Victor A. Sachse, Breazeale, Sachse & Wilson, Gordon A. Pugh, Baton Rouge, La., for intervenor Barber Bros. Contracting Co., Inc.

Before THORNBERRY and AINSWORTH, Circuit Judges, and DAWKINS, District Judge.

PER CURIAM:

This is a union unfair labor practice case. This Court is called upon to review an NLRB cease-and-desist order against Teamsters Local No. 5.[1] Briefly, the Board found that the Union had violated the National Labor Relations Act Section 8(b) (7) (B), 29 U.S.C. § 158(b) (7) (B) (1964), by picketing and handbilling Barber Brothers Contracting Company, Inc. on and subsequent to September 1967 with an object of forcing or requiring the Company to recognize or its employees to accept the Union as its collective bargaining representative, notwithstanding that the Union was not certified as the exclusive employee representative and that a valid election[2] had been held within the preceding 12-month period. N.L.R.B. v. Local 182, Internat'l Bro. of Teamsters, etc., 2 Cir., 1963, 314 F.2d 53, 58–59. Considering the findings of fact concerning the overall Union conduct upon which the Board based its decision and order, we conclude that there was substantial evidence in the record to indicate that "an object" of the picketing and handbilling was employer recognition and employee organization. Universal Camera Corp. v. National Labor Rel. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).[3]

Therefore, the order of the Board, supported by substantial evidence, is enforced.

1. National Labor Relations Act Sections 10 (e) and (f), 29 U.S.C. § 160(e) and (f) (1964). The Board decision and order are reported at 171 NLRB No. 9 (1968). This is a companion case involving identical parties and arising out of substantially contemporaneous events as contained in Teamsters Local Union 5 v. NLRB, No. 26088, also before this Court in conjunction with another Board decision and order. The instant order required Local 5 to cease and desist from picketing, causing to be picketed, or threatening to picket Barber Brothers Contracting Company, Inc. for 12 months from the last representation election or for 12 months following any subsequently conducted valid election not won by the Local.

2. Pursuant to Section 9(c), 29 U.S.C. § 159(c) (1964), the Board had conducted and certified an election in which the Company employees had voted 33–13 against union representation by the Southeastern Louisiana Laborers Union. The Teamsters Union was not the petitioning party seeking a Board, conducted election, but rather had engaged in a campaign of its own to force the Company to recognize Local 5 and the employees to accept Teamsters' representation.

3. Contrary to the Union's contention, the publicity proviso of Section 8(b) (7) (C) making merely informational picketing permissible has no application in a case involving only Section 8(b) (7) (B). The informational picketing proviso of Section 8(b) (7) (C) is confined in its application to that subsection alone. Neither Section 8(b) (7) (A) nor Section 8(b) (7) (B) contains any proviso. Provided the requisite elements of picketing for a proscribed object (recognition or organization) within 12 months of a valid election coalesce, an 8(b) (7) (B) case has been made out even if the picketing was also intended to be "informational." See Smitley v. N.L.R.B., 9 Cir., 1964, 327 F. 2d 351; N.L.R.B. v. Local 182, Internat'l Bro. of Teamsters, etc., supra. This construction of Section 8(b) (7) (B) independent of Section 8(b) (7) (C) is consistent with the language and grammatical structure of the Act, its legislative history, its manifest purpose, as well as its judicial and administrative construction.