406 F.2d 439
 70 L.R.R.M. (BNA) 2226
 TEAMSTERS LOCAL UNION NO. 5, affiliated with International
Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers, Ind., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 26088.
 United States Court of Appeals Fifth Circuit.
 Jan. 7, 1969.
 
 William C. Bradley, Baker, La., for petitioner.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Jerome Weinstein, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Paul J. Spielberg, Attys., N.L.R.B., Washington, D.C., John F. LeBus, Director, N.L.R.B., New Orleans, La., for respondent.
 Before THORNBERRY and AINSWORTH, Circuit Judges, and DAWKINS, District judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 This is a union unfair labor practice case.[1] The Union seeks review of an NLRB order and decision and the Board cross-applies for enforcement thereof.[2] The Trial Examiner found and the Board affirmed that the Union had violated Section 8(b)(4)(i) and (ii)(B), 29 U.S.C. 158(b)(4)(i) and (ii)(B),[3] by picketing Altex Ready-Mixed Concrete Corporation with the objects of inducing Altex's employees to refuse to perform services for and of forcing Altex to cease doing business with Barber Brothers Contractors, Inc. We agree and enforce.
 
 
 2
 The Trial Examiner and Board and little difficulty connecting the picketing of Altex, whose employees were Local 5 members, with the Union's dispute with Barber Brothers, a nonunion employer, whose jobsite was directly across the street from the Altex plant. Altex drivers refused to cross Union picket lines at the Barber Brothers construction site. The Union established a picket line around the Altex plant displaying signs stating: 'Heck (Altex owner) & Altex Keep your nose out of union business that doesn't pertain to you.' Altex employees, on Union orders, refused to cross the picket lines around their employer's cement plant to report to work. Several Union agents informed Altex owner, Heck, that the picketing of his plant could be terminated if he would 'agree not to have anything to do with (Barber Brothers).' The Union business agent, Ed Partin, paid the striking Altex workers cash compensation to offset lost wages. Partin warned Heck he would place his company on the 'unfair list.' Finally, Partin contacted Heck twice seeking to agree upon withdrawal of the pickets in return for Heck's withdrawal of an anti-trust suit and unfair labor practice charges against the Local.
 
 
 3
 Section 8(b)(4) of the Act was designed to prohibit 'pressure tactically directed toward a neutral employer in a labor dispute not his own.' National Woodwork Mfrs. Ass'n v. N.L.R.B., 386 U.S. 612, 623, 87 S.Ct. 1250, 1257, 18 L.Ed.2d 357 (1967). The conduct of the pickets and Local 5 agents was clearly proscribed by the Act. See Bedding, Curtain & Drapery Wkrs. Union, Local 140, of United Furniture Workers of America, A.F.L.-C.I.O. v. N.L.R.B., 2 Cir., 1968, 390 F.2d 495, 499, 503, cert. denied, 392 U.S. 905, 88 S.Ct. 2056, 50 L.Ed.2d 1363 (1968) (conduct manifestly coercive); Superior Derrick Corporation v. N.L.R.B., 5 Cir., 1960, 273 F.2d 891, 894, cert. denied, sub. nom. Seafarers' Int'l Union v. N.L.R.B., 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47 (1960) (picketing carried 'special message of its own' to neutral company employees). The picket sign language alone indicated an illegal objective which would override any union defense predicated on a 'purely informational' purpose. National Labor Rel. Bd. v. Denver Bldg. & Const. Tr. C., 341 U.S. 675, 689, 71 S.Ct. 943, 952, 95 L.Ed. 1284 (1951); N.L.R.B. v. New York, Lithographers & Photo-Eng. U. No. One-P Lithographers & Photo-Engravers International Union A.F.L.-C.I.O., 3 Cir., 1967, 385 F.2d 551, 554-555.
 
 
 4
 The Union attempted to invoke the proviso of Section 8(b)(4)(ii)(B) allowing publicity 'other than picketing' to advise the public that Altex was handling products '* * * produced by an employer with whom the labor organization has a primary dispute and (which) are distributed by another employer.' Cf. N.L.R.B. v. Fruit & Veg. Pack. & Whse., Loc. 760, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964). This exemption, however, is not available under the facts of this case, where Altex does not distribute any Barber Brothers manufactured product and where the Altex employees are already Local 5 members. No legitimate recognitional or organizational object could be involved. The Union also contended that there existed no 'direct connection' between Local 5 and the picketing of Altex. This assertion must be dismissed as completely unreasonable under the facts shown in the record.
 
 
 5
 We have no difficulty concluding that there existed substantial evidence on the record as a whole to support the Board's decision that the Union violated Section 8(b)(4)(i) and (ii)(B). See Burr v. N.L.R.B., 5 Cir., 1963, 321 F.2d 612, 617-619. We also conclude that, under the circumstances of this local Union's repeated and flagrant violation of this and other sections of the Act, the remedy adopted by the Board[4] was consistent with the congressional intent to allow the Board broad discretionary power to effectuate the policies of the Act, viz., to protect neutral employers from a labor conflict not their own. Cf. Republic Steel Corp. v. National Labor Relations Bd., 311 U.S. 7, 12, 61 S.Ct. 77, 79-80, 85 L.Ed. 6 (1940); N.L.R.B. v. Bush Hog, Inc., 5 Cir., 1968, 405 F.2d 755 (Dec. 26); Mel Croan Motors, Inc. v. N.L.R.B., 5 Cir., 1968, 395 F.2d 154.
 
 
 6
 Enforcement, therefore, is granted.
 
 
 
 [1]
 A companion case involving another Board order and decision, 171 N.L.R.B. No. 9, stemming from other proscribed conduct arising out of related circumstances was recently decided by us. See Teamsters Local No. 5, etc. v. N.L.R.B., 5 Cir., 1968, 405 F.2d 864 (Dec. 20)
 
 
 [2]
 The Board order and decision is reported at 170 N.L.R.B. No. 37. The parties seek relief pursuant to respective rights under Section 10(e) and (f), 29 U.S.C. 10(e) and (f). The Board adopted the Trial Examiner's decision and recommended order as its own
 
 
 [3]
 Briefly, subparagraph (i) prohibits union inducement of employees to cease work and subparagraph (ii) makes it unlawful for a union to threaten, coerce, or restrain 'any person,' including an employer where the conduct includes one or more of the proscribed secondary objectives. A combination of prohibited action and prohibited objective is essential. See generally 3 CCH Lab.L.Rep. P5220
 
 
 [4]
 The Board ordered Local 5, inter alia, to cease and desist from 'picketing or otherwise inducing or encouraging any individual employed by Altex or any other person engaged in commerce or in an industry affecting commerce to engage in a strike or refusal in the course of his employment' to handle, to deal in the products of or to cease doing business with Barber Brothers. Member Fanning of the Board dissented without reasons from the order, presumably because of its scope